IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 6376 |
| | ) | |
| v. | ) | |
| | ) | Judge John Z. Lee |
| MONARCH RECOVERY | ) | |
| MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Steven Carter alleges that Defendant Monarch Recovery, Inc. ("Monarch"), sent him a debt-collection letter that contained false, misleading, or deceptive language, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Carter also contends that Monarch's letter violated provisions of the Illinois Collection Agency Act ("ICAA"), 225 Ill. Comp. Stat. 425/9(a). Both parties have filed motions for summary judgment. For the reasons stated herein, Monarch's motion is granted, and Carter's motion is denied.

## Background[1]

Plaintiff Steven Carter is a resident of Chicago, Illinois, and Defendant Monarch Recovery Management, Inc., is a Pennsylvania corporation which collects debts on behalf of third parties. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 1, 2, ECF No. 31; Pl.'s LR 56.1(a)(3) Stmt. ¶ 9, ECF No. 38. In 2016, Carter defaulted on a credit-card debt

---

[1] The following facts are undisputed except where noted. Any properly supported fact that a party disputes without "providing specific references to the affidavits, parts of the record, and other supporting materials relied upon," LR 56.1(b)(3)(B), is deemed admitted. *See Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710 (7th Cir. 2015).

to Citibank. Pl.'s LR 56.1(a)(3) Stmt. ¶ 6. Citibank "charged off" the account in October 2015 with a balance of $16,743.33, *id*. ¶ 7, and, on May 23, 2016, Citibank placed Carter's account with Monarch for collection, *id*. ¶ 8. The balance remained $16,743.33. *Id*.

On May 25, 2016, Monarch sent Carter a debt-collection letter seeking $16,743.33 and stating, in relevant part:

> Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.

*Id*. ¶ 10. In short, Monarch's letter informed Carter that the balance of $16,743.33 might increase by the time Carter were to pay it. *See id*.

Monarch did not have its own authority to add additional charges for accounts that it received from creditors, such as interest or late fees. But creditors such as Citibank would sometimes add additional such fees. *Id*. ¶ 14; Pl.'s Ex. C, Mazzacano Dep. at 20:15, 21:21–22:1, ECF No. 38-4. Monarch would then pass on these additional fees to the consumer. Pl.'s LR 56.1(a)(3) Stmt. ¶ 14. Here, however, Citibank and Monarch never added additional fees to the $16,743.33 amount. *Id*. ¶¶ 16, 17.

## **Legal Standards**

When deciding a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court views the evidence in the light most favorable to the

2

non-moving party. *Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). The motion will be granted if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Id*. Rule 56 "requires the district court to grant a motion for summary judgment after discovery 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 743 (7th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The moving party has the initial burden of establishing that there is no genuine issue of material fact. *See Celotex,* 477 U.S. at 322. Once the moving party has sufficiently demonstrated the absence of a genuine issue of material fact, the nonmoving party must then set forth specific facts showing there are disputed material facts that must be decided at trial. *See id*. at 321–22. The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## Analysis

I.   **Carter's FDCPA Claim**

According to Carter, the language in Monarch's letter violated the FDCPA because it falsely, deceptively, or misleadingly represented that Monarch might add additional charges to the $16,743.33 balance, even though Monarch had neither the intention nor authority to do so. In seeking summary judgment on Carter's claim,

3

Monarch argues that Carter has produced insufficient evidence that would permit a reasonable jury to find that Carter has established the requisite elements of his claim.

Under 15 U.S.C. § 1692e, debt collectors may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. "It is deceptive or misleading to imply that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass." *Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (2012). Moreover, a debt collector may not threaten to take action that it intends not to take. *See, e.g., Haddad v. Midland Funding, LLC*, 255 F. Supp. 3d 735, 745 (N.D. Ill. 2017) (quoting § 1692e(5)).

As with other FDCPA claims, claims brought under § 1692e "are evaluated under the objective unsophisticated consumer standard." *Gruber v. Creditors' Protection Serv., Inc.*, 742 F.3d 271, 273–74 (7th Cir. 2014) (citing *Bartlett v. Heibl,* 128 F.3d 497, 500 (7th Cir. 1997); *Avila v. Rubin,* 84 F.3d 222, 226 (7th Cir. 1996)). The unsophisticated consumer may be "uninformed, naive, or trusting," but "possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence' and is capable of making basic logical deductions and inferences." *Bartlett,* 128 F.3d at 500.

Here, Carter has failed to present any evidence that the disputed statement in Monarch's letter represented either a legal impossibility or an action that it intended not to take. As to the former, Carter claims that Monarch has admitted in its

4

statement of facts that it had lacked the authority to add any charges beyond the initial balance of $16,743.33. This is true up to a point. In fact, what Monarch states (and what Plaintiff does not dispute) is that "Monarch *itself* did not have the authority to charge interest, late fees, or other charges on Plaintiff's account *unless instructed to do so by Citibank*." Def.'s LR 56.1(a)(3) Stmt. ¶ 18 (emphasis added); Pl.'s Resp. Def.'s LR 56.1(a)(3) Stmt. ¶ 18. And in his own statement of facts, Plaintiff quotes a Monarch representative as testifying that "Monarch does not charge interest. The client controls – sorry, the creditor controls that. . . . Monarch wouldn't charge late charges or any fees or charges on any account. The client would." Pl.'s LR 56.1(a)(3) Stmt. ¶ 14.[2] Therefore, the record indicates that, while

---

[2] Diane Mazzacano, Monarch's Chief Executive Officer, testified as follows:

> Q: To your knowledge . . . was Citibank allowed to charge interest on Mr. Carter's account? . . .
>
> A: Monarch's client was not authorized. Again I am just telling you what I believe. I believe that they were authorized according to the terms and conditions of the debt instrument or credit card agreement.
>
> Q: Now was Monarch allowed to charge interest on Mr. Carter's account?
>
> A: I don't know about the word allowed but that's not what Monarch – that's not the agreement between Monarch and its client. Monarch does not charge interest. The client controls – sorry, the creditor controls that. . . .
>
> Q: So does Citibank ever give Monarch the authority to charge interest on Mr. Carter's account?
>
> A. Monarch doesn't charge interest on accounts. The client controls that. We receive adjustments on a daily basis for accounts

5

Monarch did not have the authority to assess additional fees or interest on its own, to the extent that Citibank did so, Monarch would change the outstanding balance to reflect the new charges. Confronted with this record, Carter points to no evidence that Monarch's ability to adjust the balance in this manner was a legal impossibility.

Carter also contends that Monarch had no intention of adding any additional charges and, therefore, the statement in the letter violated § 1692e(5). But the only evidence that Carter cites in support is the fact that, at the end of the day, Monarch did not add any more interest or fees to the original balance. Pl.'s LR 56.1(a)(3) Stmt. ¶¶ 16, 17. But, as Monarch points out, the fact that it did not add any new charges—without more—is insufficient to create a factual dispute as to whether Monarch knew, at the time that it sent the letter to Carter, that it would not add any additional charges under any circumstances (for example, if Citibank itself assessed new fees or charges). *See Taylor v. Cavalry Inv., LLC*, 365 F.3d 572, 575 (7th Cir. 2004) (rejecting argument that the fact that creditors did not add interest at the end of the day meant that their statement that they might add interest was false).

Carter's reliance upon *Ruge v. Delta Outsource Group., Inc.*, No. 15-cv-10865, 2017 WL 959017 (N.D. Ill. Mar. 13, 2017), is misplaced. In that case, the undisputed facts established that the collection company had a policy of not adding late charges or interest to the accounts that came from the particular creditor. *Id.*

---

and we apply those adjustments to the accounts per Citi's instructions.

Pl.'s LR 56.1(a)(3) Stmt., Ex. C, Mazzacano Dep. at 19:21–21:17.

at 1, n.3. There is no evidence of such a policy here. Rather, the evidence shows that it was Citibank who controlled whether additional charges were to be placed on the account, and Monarch simply followed suit.[3]

Accordingly, as to both of Carter's theories of liability, Monarch has met its initial burden of demonstrating that the record lacks evidence to support Carter's FDCPA claims, and Carter has failed to point to any evidence from which a reasonable jury could conclude that the statement in the letter was false, misleading, or deceptive. *See Celotex,* 477 U.S. at 321–22.

Carter makes much of Monarch's failure to support its motion for summary judgment with a properly authenticated copy of Carter's credit-card agreement with Citibank. *See generally* Def.'s Ex. 3, Card Agreement, ECF No. 43 (purporting to be Carter's card agreement with Citibank); Pl.'s Mem. Supp. Summ. J. at 7–10. He is right to object to the document's admissibility.[4] But, as noted above, Carter points to no evidence to dispute the fact that Monarch is able to add additional charges to

---

[3] Similarly, in *Lox*, 689 F.3d at 824, the court found that the defendant's statement that a court could award it attorneys' fees and costs was false because the defendant admitted that an award of attorneys' fees "was not a possible outcome." Here, the record shows that Monarch would have updated the outstanding balance, if Citibank had assessed additional charges.

[4] Monarch has not established the document's admissibility. First, it offers a declaration from Mazzacano, which states that the document is a true and accurate copy of the credit card agreement between Carter and Citibank. But, Mazzacano can attest only that the document is a true copy of the document that she *received* from Citibank. She is not qualified to testify that the document is in fact a true and correct copy of the credit card agreement at issue. Additionally, even if she were able to establish the document's authenticity, Mazzacano cannot provide the foundation necessary to establish that the document is a business record of Citibank under Rule 803(6), and it would constitute inadmissible hearsay.

the balance, so long as Citibank does so. What is more, as the party bearing the burden of persuasion at trial, to the extent that Carter believes that the credit card agreement would have supported his claims, it is his burden to present it in admissible form now. He has not done so.

For these reasons, Monarch's motion for summary judgment is granted as to Carter's FDCPA claim.

## II. Carter's ICAA Claim

Additionally, Carter argues that Monarch "attempt[ed] or threaten[ed] to enforce a right or remedy with knowledge or reason to know the right or remedy does not exist" in violation of 225 Ill. Comp. Stat. 425/9(a)(24), by stating in the letter that the outstanding balance might increase, when Monarch knew that it could not. Carter also contends that Monarch violated 225 Ill. Comp. Stat. 425/9(a)(33) by including the disputed language in an effort to collect fees in excess of the actual debt, even though the agreement creating the debt did not permit them.

As to both provisions, Carter again argues that he survives summary judgment because Monarch failed to provide an authenticated copy of his credit-card agreement, which would show whether Citibank (and thus Monarch) had the right to assess more fees and interest to the $16,743.33 balance. *See* Pl.'s Mem. Supp. Summ. J. at 7–10. But, again, it is Carter's responsibility to present affirmative evidence to support his claims. And Carter failed to produce any admissible evidence from which a reasonable jury could conclude that Monarch lacked authority

8

to add additional charges to the $16,743.33 balance, *see* 225 Ill. Comp. Stat. 425/9(a)(33), or that Monarch knew or had reason to know it could not do so, *see* 225 Ill. Comp. Stat. 425/9(a)(24). In fact, the evidence in the record shows otherwise. Therefore, Monarch's motion for summary judgment as to Carter's ICAA claims also is granted.

### Conclusion

For the reasons stated herein, Defendant's motion for summary judgment [29] is granted. Plaintiff's motion for summary judgment [37] is denied as moot. Judgment shall be entered in favor of Defendant Monarch Recovery, Inc. Civil case terminated.

**SO ORDERED**  **ENTER:  3/20/18**

_____
**JOHN Z. LEE**
**United States District Judge**