IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 6376 |
| | ) | |
| v. | ) | |
| | ) | Judge John Z. Lee |
| MONARCH RECOVERY MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Steven Carter sued Defendant Monarch Recovery Management, Inc. ("Monarch"), alleging it sent him a debt collection letter that violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., and the Illinois Collection Agency Act, 225 Ill. Comp. Stat. § 425/9(a). The Court entered summary judgment in favor of Monarch. Monarch now seeks sanctions pursuant to Federal Rules of Civil Procedure 11, 37(c)(2), and 56(h), as well as 15 U.S.C. § 1692k(a)(3). For the following reasons, Monarch's motions [60] [75] are denied.

**Background**

As explained in greater detail in the Court's summary judgment opinion, the basis for this lawsuit is a debt collection letter Carter received from Monarch in May 2016. Mem. Op. & Order at 2, ECF No. 58. Earlier that year, Carter had defaulted on a credit card debt to Citibank, and Citibank placed the account with Monarch for collection. *Id.* at 1–2. Monarch then sent Carter a letter seeking $16,743.33—the balance of the account—and informing him that the balance may increase due to interest, late fees, or other charges. *Id.* at 2. Monarch itself did not have authority to add charges to the account, but Citibank could do so, in which case Monarch would pass on the additional fees to the consumer. *Id.* Here, no additional charges were added to the account. *Id.*

In ruling on the parties' cross-motions for summary judgment, the Court concluded that Carter had failed to present evidence that the statement in Monarch's letter was a legal impossibility or an action it intended not to take, and that he had failed to produce evidence from which a reasonable jury could conclude that the statement was false, misleading, or deceptive. *Id.* at 4–7. Monarch now seeks sanctions against Carter and his counsel.

## Legal Standards

### I. Rule 11

Rule 11 provides that an attorney must not pursue a claim that is not "warranted by existing law." Fed. R. Civ. P. 11(b)(2). Further, "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). In determining if sanctions under Rule 11 are warranted, "[t]he court must 'undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless.'" *Cuna Mut. Ins. Soc'y v. Office & Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (quoting *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters*, *Local 731*, 990 F.2d 957, 963 (7th Cir. 1993)). The decision to impose sanctions is entrusted to the discretion of the district court, which is best situated to know whether an attorney conducted a proper inquiry into the facts underlying a case. *Cuna*, 443 F.3d at 560.

### II. § 1692k(a)(3)

Under the FDCPA, "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3).

To prevail under this provision, a defendant must prove that the plaintiff's entire lawsuit—as opposed to only certain claims—was brought in bad faith and for the purpose of harassment. *Horkey v. J.V.D.B. & Assocs.*, 333 F.3d 769, 775 (7th Cir. 2003).

### III.     Rule 37(c)(2)

Under Rule 37(c)(2), a court must impose reasonable expenses, including attorney's fees, on a party that fails to properly admit the genuineness of a document pursuant to a Rule 36 request for admission, unless: "(A) the request was held objectionable under Rule 36(a); (B) the admission was of no substantial importance; (C) the party failing to admit had reasonable ground to believe that it might prevail on the matter; or (D) there was other good reason for the failure to admit." Fed. R. Civ. P. 37(c)(2)(A)–(D); *United States v. Pecore*, 664 F.3d 1125, 1136 (7th Cir. 2011).

### IV.     Rule 56(h)

Rule 56(h) states: "If satisfied that an affidavit or declaration . . . is submitted in bad faith or solely for delay, the court . . . may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result." Fed. R. Civ. P. 56(h). There are few cases applying this rule, but "the upshot is that the Court 'has wide discretion in deciding what constitutes bad faith.'" *Paniagua v. Max 18, Inc.*, No. 11 C 00320, 2013 WL 5907893, at *7 (N.D. Ill. Nov. 4, 2013) (quoting 10B Wright, Miller & Kane, Federal Practice & Procedure Civil 3d § 2742 (April 2013 Supp.)) (internal quotation marks omitted).

## Analysis

### I.     Monarch's Rule 11 Motion

Monarch advances three arguments in support of Rule 11 sanctions. First, it contends that Carter's claims lacked legal support. Second, it argues that Carter's counsel failed to investigate his claims, which had no factual support. Third, it posits that the purpose of the lawsuit was to

3

harass Monarch. Def.'s Mot. R. 11 Sanctions at 9, ECF No. 60. For the reasons discussed below, none of these arguments is persuasive.

### A. Legal Support for Plaintiff's Claims

Monarch contends that Carter's claims lacked legal support because the language in Monarch's debt collection letter mirrors the "safe-harbor" language approved by the Seventh Circuit in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, LLC*, 214 F.3d 872 (7th Cir. 2000). There, the Court of Appeals stated:

> "We hold that the following statement satisfies the debt collector's duty to state the amount of the debt in cases . . . where the amount varies from day to day: 'As of the date of this letter, you owe $___ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-[phone number].'"

*Id.* at 876.

Monarch's letter to Carter used identical language. *See* Pl.'s LR 56.1 Stmt., Ex. E, ECF No. 38. In Monarch's view, this necessarily means that Carter's claims lacked legal support. As Carter points out, however, courts have found that the safe-harbor language can still violate the FDCPA if "the action suggested is legally prohibited." *Wilder v. J.C. Christensen & Assocs., Inc.*, No. 16-cv-1979, 2016 WL 7104283, at *4 (N.D. Ill. Dec. 6, 2016); *cf. Toction v. Eagle Accounts Grp., Inc.*, No. 1:14-cv-689-WTL-DKL, 2015 WL 127892, at *3 (S.D. Ind. Jan. 8, 2015) (stating that truisms about potential interest payments are not deceptive "if [the defendant] could actually charge interest on [the plaintiff's] account"). Here, Carter alleged that the statement was false because Monarch could not actually charge him interest or late fees, because Citibank had waived its right to do so. Carter pointed to the facts that Citibank had charged off the debt, stopped sending him statements, and had not charged him interest or late fees for seven months before placing the

4

debt with Monarch for collection.

As Monarch points out, the court in *Wilder* found similar allegations insufficient to plausibly allege that a creditor had waived its right to collect interest or late fees. 2016 WL 7104283, at *6. But *Wilder* is distinguishable from this case, and does not make Carter's continued pursuit of his claims sanctionable. In *Wilder*, the court concluded that the fact that the defendant had not charged interest over a ten-day period between charging off the debt and placing it with a collection agency was insufficient to find implied waiver of the creditor's right to charge interest. *Id.* In this case, however, the period between charge-off and placement with a collection agency— approximately seven months—was significantly longer than ten days. Ultimately, the Court here concluded that the mere absence of additional charges over this period was insufficient to create a dispute of fact as to whether Carter's balance *could have* increased; however, "[a] court should not impose sanctions on a party that loses an argument, as long as the argument was not entirely groundless." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 917 (7th Cir. 2015). Although the factual basis for Carter's claims was thin and the claims eventually failed when exposed to the light of discovery, they were not clearly frivolous or foreclosed by law. Thus, the Court declines to impose sanctions under Rule 11(b)(2).

### B. Factual Support for, and Investigation of, Plaintiff's Claims

Monarch further contends that sanctions are warranted because the terms of Carter's credit card agreement with Citibank show that Citibank had the right to add interest and late fees, thereby demonstrating that Carter's claims had no factual support.

This argument is problematic, however, because it rests on the substance of Carter's credit card agreement with Citibank. As the Court discussed in its summary judgment opinion, neither party was able to produce a properly authenticated copy of the agreement. *See* Mem. Op. & Order

at 7–8. Thus, Monarch's copy of what it professes to be Carter's agreement is an insufficient basis from which to conclude that his claims lacked evidentiary support. In any event, as Carter points out, the terms and conditions of Monarch's copy of the agreement do not necessarily disprove his claims, because "the fact that Citibank at one point in time had the right to charge interest or other fees does not imply that Monarch would ever have such authority." Pl.'s Mem. Opp. Mot. R. 11 Sanctions at 6, ECF No. 68. While the Court ultimately concluded that Carter's claims were not supported by evidence sufficient to withstand summary judgment, they were not so clearly baseless as to warrant sanctions under Rule 11(b)(3).

      **C.**     **Harassment of Monarch**

Monarch also argues that Carter's deposition testimony—and his counsel's failure to dismiss this action after he testified—shows that the purpose of this lawsuit was to harass Monarch and recover attorney's fees. Specifically, Carter testified that he understood that he could be charged interest and penalties for nonpayment of his credit card debt. *See* Def.'s Mot. R. 11 Sanctions, Ex. A ("Pl.'s Dep.") at 48:9–49:10, ECF No. 60-1. Further, he testified that the statement in Monarch's letter did not constitute a threat. Pl.'s Dep. at 62:13–63:5. Carter also testified that one of the allegations in his complaint—the date after which Citibank stopped charging him interest and late fees—was incorrect. *Id.* at 73:13–73:22. Finally, he testified that he should have reviewed the terms of his credit card agreement prior to filing suit. *Id.* at 51:10–52:2. In light of Carter's testimony, Monarch contends, his counsel should have dismissed this case, and failure to do so warrants Rule 11 sanctions.

This argument is unpersuasive for several reasons. First, the fact that Carter understood that he could be charged interest and other fees by *Citibank* does not necessarily contradict his argument that *Monarch* did not have the ability or intent to charge him such fees. Second, whether

Carter perceived Monarch's letter to be a threat is immaterial because FDCPA claims are analyzed using the objective "unsophisticated consumer" standard, pursuant to which "it is unimportant whether the individual that actually received a violative letter was misled or deceived." *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012). Third, although Carter testified that his complaint contained a factual error as to the date Citibank ceased charging him interest or other fees,[1] that is of relatively little importance considering the Court's conclusion that "the fact that, at the end of the day, Monarch did not add any more interest or fees" was insufficient to create a factual dispute. *See* Mem. Op. & Order at 6. This conclusion was not dependent on the date upon which Citibank stopped charging Carter interest or fees.

And finally, Carter's testimony that he should have reviewed his credit card agreement does not necessarily undermine his claims for the reason discussed above—the fact that the agreement may have shown that *Citibank* had the ability to charge him additional fees at one point does not disprove his claim that *Monarch* could not do so when it sent the letter. Thus, Carter's testimony does not demonstrate that this lawsuit was pursued to harass Monarch, and the Court declines to impose sanctions on this basis.

In sum, the Court concludes that Rule 11 sanctions are not warranted in this case.

## II.     Monarch's Second Sanctions Motion

Monarch's second sanctions motion seeks relief pursuant to § 1692k(a)(3), Rule 37(c)(2), and Rule 56(h). Echoing its arguments in support of Rule 11 sanctions, Monarch contends that Carter brought this lawsuit in bad faith and for the purpose of harassment, that he failed to present evidence in support of his claims, and that his declaration in support of his summary-judgment motion contained contradictory facts. This motion too is denied.

---

[1]     Carter's complaint states that Citibank stopped charging interest or other fees to his account in March 2015, when the correct date is apparently October 2015.

A.  § 1692k(a)(3)

Monarch argues that it is entitled to attorney's fees under § 1692k(a)(3) because—as argued in its Rule 11 motion—Carter's claims had no legal or factual support. According to Monarch, this shows that the lawsuit was brought in bad faith and for the purpose of harassment.

As an initial matter, Carter contends that Monarch's motion is procedurally deficient because, although styled as a motion for sanctions, it "is substantively a motion for attorney's fees" that must comply with Local Rule 54.3. Pl.'s Resp. Def.'s 2d Sanctions Mot. at 2, ECF No. 80. Carter argues that Monarch has failed to comply with the rule and has waived its right to attorney's fees. The Court declines to address compliance with Local Rule 54.3, however, because it is clear that the motion should be denied on the merits.

In arguing that it should be awarded attorney's fees under § 1692k(a)(3), Monarch largely repeats its arguments in support of its Rule 11 motion. It argues that "the absence of proper factual or legal grounds" for Carter's claims shows that his lawsuit was brought in bad faith and for the purpose of harassment. Def.'s 2d Sanctions Mot. at 11, ECF No. 75. This argument is unpersuasive for the reasons discussed above. As the Court has already concluded, Carter's—and his counsel's—actions in pursuing this case do not rise to the level of sanctionable conduct under Rule 11. Thus, there is nothing in the record to demonstrate that this lawsuit was brought in bad faith. The Court therefore declines to award attorney's fees under § 1692k(a)(3).

B.  Rule 37(c)(2)

Monarch also seeks cost-of-proof sanctions under Rule 37(c)(2), contending that Carter unreasonably denied five of Monarch's Rule 36 requests for admission ("RFAs"). Specifically, Monarch is concerned with Carter's denial of the following RFAs:

**RFA 1:**  Admit that YOU . . . did not suffer an injury-in-fact as alleged in the Complaint.

8

    **RFA 3:**    Admit that YOU did not suffer any pecuniary loss as a result of any action of [Monarch].

    **RFA 5:**    Admit that YOU have no evidence that Citibank ceased charging interest and late fees on YOUR account in March 2015.

    **RFA 6:**    Admit that YOU have no evidence that Citibank waived its right to collect interest on YOUR account after it was charged off.

    **RFA 7:**    Admit that YOU have no evidence that Citibank waived its right to collect late fees on YOUR account after it was charged off.

Pl.'s Resp. Def.'s Interrogatories, Requests to Admit, & Requests for Production of Documents at 10–11, ECF No. 34-6.

    Monarch's motion fails to develop the argument that it is entitled to fees and costs under Rule 37(c)(2), simply stating that "there was no good reason for the failure to admit" because "this Court ultimately determined that Plaintiff had failed to present any evidence in support of his claims." Defs.'s 2d Sanctions Mot. at 14. Monarch's argument boils down to this: because Monarch prevailed on summary judgment, it proved the above RFAs to be true. But whether a party prevailed on summary judgment is not determinative, because Rule 37(c)(2) recognizes four exceptions that excuse a party's failure to admit a fact later proven true. Monarch's motion fails to address these exceptions or otherwise explain why it is entitled to relief under Rule 37(c)(2).

    Carter contends that Rule 37(c)(2) sanctions are unwarranted because each of his responses to the above-listed RFAs fits within one of the rule's exceptions. The Court agrees. Carter's responses to RFA Nos. 1, 6, and 7 fall within Rule 37(c)(2)(C), which excuses a party's denial of a fact later proven true if "the party . . . had reasonable ground to believe that it might prevail on the matter." Fed. R. Civ. P. 37(c)(2)(C). For the reasons discussed above as to why Rule 11 sanctions are unwarranted, the Court concludes that Carter had reasonable ground to believe that he might prevail on the issues of whether he had suffered an injury-in-fact in the form of an FDCPA

violation[2] and whether Citibank had waived its right to collect interest and late fees. That leaves RFA Nos. 3 and 5. Carter argues that RFA No. 3 falls within Rule 37(c)(2)(B), which excuses failure to admit a fact later proven true that was "of no substantial importance." Fed. R. Civ. P. 37(c)(2)(B). Monarch counters that this fact is significant because it goes to the issue of Carter's lack of damages. But the Court's summary judgment ruling was in no way based on damages or lack thereof. As such, RFA No. 3 is not a basis for awarding fees and costs under Rule 37(c)(2).

The parties agree, however, that RFA No. 5 should have been admitted. Although Carter denied that there was no evidence showing that Citibank had stopped charging him interest and fees in March 2015, he later testified that the correct date was October 2015. The Court concludes that, again, this was not a matter of substantial importance. As explained above with respect to Monarch's Rule 11 motion, the difference in dates had no bearing on the Court's summary-judgment ruling. Thus, the Court concludes that failure to admit RFA No. 5 does not require the award of fees and costs under Rule 37(c)(2).

Because the Court concludes that Carter's denials of the foregoing RFAs fall within one of the listed exceptions in Rule 37(c)(2), Monarch's request for fees and costs is denied.

### C. Rule 56(h)

Finally, Monarch seeks sanctions pursuant to Rule 56(h), based on allegedly contradictory facts in Carter's declaration supporting his motion for summary judgment. Monarch argues that Carter's declaration was submitted in bad faith because it "critically omitted facts from his deposition testimony." Def.'s 2d Sanctions Mot. at 14. Specifically, Carter testified that the only time he had reviewed his credit card agreement with Citibank was when Monarch provided (what

---

[2] *See Haddad v. Midland Funding, LLC*, 255 F. Supp. 3d 735, 743 (N.D. Ill. 2017) ("[T]he judgment of Congress, the guidance of history, and [*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)] compel the conclusion that the harm of receiving misleading information in violation [of] a statutory right to truthful information is concrete.").

10

purported to be) a copy of the agreement to him prior to his deposition. Subsequently, in his declaration supporting his motion for summary judgment, Carter denied the authenticity of that copy. Monarch contends that the affidavit contained contradictory facts because Carter failed to explain "how he would be able to determine the authenticity of Monarch's copy, having never reviewed his own agreement." *Id.*

Even to the extent that the affidavit contains a contradiction, however, the Court cannot conclude that a single factual contradiction supports a finding that the entire affidavit was submitted in bad faith. As such, Monarch's request for sanctions under Rule 56(h) is denied.

### Conclusion

For the foregoing reasons, Monarch's motions for sanctions pursuant to Rule 11 [60] and for sanctions pursuant to § 1692k(a)(3), Rule 37(c)(2), and Rule 56(h) [75] are denied.

**IT IS SO ORDERED.**                    **ENTERED  2/12/19**

*[signature]*
_____

**John Z. Lee**
**United States District Judge**

11